UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN FEDERATION OF MUSICIANS AND
EMPLOYERS' PENSION FUND, ET AL.,

Plaintiffs,

– against –

NESHOMA ORCHESTRA AND SINGERS, INC.,

Defendant.

NESHOMA ORCHESTRA AND SINGERS, INC.,

Third-Party
Plaintiff,

– against –

THE ASSOCIATED MUSICIANS OF GREATER
NEW YORK, LOCAL 802, AFM, AFL-CIO,

Third-Party
Defendant.

17-cv-2640 (JGK)

OPINION & ORDER

JOHN G. KOELTL, District Judge:

The third-party plaintiff, Neshoma Orchestra and Singers,
Inc. ("Neshoma"), brings this action against the third-party
defendant, the Associated Musicians of Greater New York, Local
802, AFM (the "Union"), alleging claims for breach of contract,
indemnification, fraud, and negligent misrepresentation.
Neshoma is a band that employs musicians. Some of Neshoma's
employees are members of the Union. The Union has moved to
dismiss the claims in the Second Amended Third-Party Complaint
(the "SAC") for lack of subject matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1) and for failure to
state a claim pursuant to Federal Rule of Civil Procedure
12(b)(6).

## I.

The following facts are accepted as true for the purposes
of this motion.

This case concerns an agreement (the "Pension
Agreement") -- and the renewal negotiations of that agreement --
between Neshoma and the Union.  The Pension Agreement set forth
the terms by which Neshoma made pension contributions to the
American Federation of Musicians and Employers' Pension Fund
(the "Fund") on behalf of its employees who were members of the
Union.  SAC ¶ 49.

On July 31, 2009, the Pension Agreement expired, and
Neshoma and the Union began to negotiation its renewal.
Id. ¶¶ 50-51.  The negotiations lasted for nearly six years,
until October of 2015, when a renewal agreement was signed.  Id.
¶ 80.  This case concerns an oral contract that was allegedly
made during the course of the negotiations.

Neshoma alleges that, in the summer of 2013, four years
into the renewal negotiations, the Union took steps to put
pressure on Neshoma to sign the renewal agreement.  First, the
Union, "in an effort to exert pressure on Neshoma to agree to

the Union's demand for [the] . . . renewal agreement," demanded that the Fund assess withdrawal liability against Neshoma. Id. ¶ 53. The Fund "acquiesced to the Union's demand" and issued an assessment of withdrawal liability against Neshoma "with the knowledge that the demand was merely to pressure Neshoma on behalf of the Union". Id. ¶ 55. Second, the Union filed charges against Neshoma with the National Labor Relations Board ("NLRB") and the New York State Public Employment Relations Board. Id. ¶ 54.

In light of the Fund's assessment of withdrawal liability and the Union's filing of unfair labor charges, the parties negotiated an agreement that would govern the procedure for future discussions of the renewal agreement. Id. ¶ 57. Neshoma agreed to resume negotiations if the Union agreed to withdraw the unfair labor charges and if the Fund rescinded the assessment of withdrawal liability. The Union agreed to this proposal, withdrew the unfair labor charges, and "caused the Fund [to rescind] its demand to assess withdrawal liability". Id. ¶ 58. The parties subsequently resumed negotiations. Id.

In or around the summer of 2015, the Union again allegedly demanded that the Fund assess withdrawal liability against Neshoma for the purpose of placing pressure on Neshoma to sign the renewal agreement. Id. ¶ 60. Again, allegedly solely in response to this demand, the Fund assessed withdrawal liability

against Neshoma and by letter dated August 27, 2015 demanded payment of the withdrawal liability. Id. ¶ 62.

Approximately two months later, on October 7, 2015, the parties met for a negotiation session. Id. ¶ 77. The meeting was held at the Union's offices. Id. At the meeting, an officer of Neshoma asked the Union's counsel if the withdrawal liability that had been assessed against Neshoma would "go away" if the renewal agreement was signed. Id. ¶ 78. The Union's counsel responded that "[e]verything will go away." Id. ¶ 79. Allegedly in reliance on this promise that the Union would cause the Fund's assessment of withdrawal liability to "go away", Neshoma executed the renewal agreement that same day. Id. ¶ 80.

Later that day, the Union's counsel sent an email to the Fund informing them that the Union and Neshoma had signed a renewal agreement and "request[ing] that . . . Neshoma's withdrawal liability be expunged." Id. ¶ 81. However, despite this request, the Fund did not rescind its assessment of withdrawal liability. Id. ¶ 82. In April 2017, the Fund filed suit against Neshoma to recover the withdrawal liability.[1]

Neshoma alleges that the Union's promise that "everything will go away" if Neshoma signed the renewal agreement created an oral contract between the Union and Neshoma. Under the terms of

_____

[1] The Fund's complaint against Neshoma to recover the withdrawal liability is the primary pleading in this action.

that oral contract, Neshoma agreed to sign the renewal agreement in exchange for the Union's promise that it would cause the Fund to rescind the withdrawal liability. Id. ¶¶ 76, 82. Neshoma alleges that it would not have signed the renewal agreement if the Union had not made this promise. Id. ¶ 80. Neshoma further alleges that this promise was made by the Union with knowledge that it could not actually compel the Fund to rescind the withdrawal liability. Id. ¶ 116-17. Neshoma alleges claims for breach of contract, fraud, indemnification and negligent misrepresentation based on the Union's failure to fulfill its promise to force the Fund to rescind the withdrawal liability.

## II.

The defendant has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may consider matters outside the pleadings, such as affidavits, documents, and testimony. See, e.g., Antares Aircraft v. Fed. Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991), aff'd on remand, 999 F.2d 33 (2d Cir. 1993); Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.,

No. 98-cv-1965, 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001).

Thus, the standard used to evaluate a Rule 12(b)(1) motion is

similar to that used for summary judgment under Fed.R.Civ.P. 56.

See Kamen, 791 F.2d at 1011. The plaintiff has the ultimate

burden of proving the Court's jurisdiction by a preponderance of

the evidence. See Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.

1996); Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 762

(2d Cir. 1983); see also Kehr Packages, Inc. v. Fidelcor, Inc.,

926 F.2d 1406, 1409 (3d Cir. 1991) (when subject matter

jurisdiction is challenged under Rule 12, plaintiff must bear

burden of persuasion); Martin v. Reno, No. 96-cv-7646, 1999 WL

527932 (S.D.N.Y. July 22, 1999). See also Lopresti v. Merson,

No. 00-cv-4255 (JGK), 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21,

2001).

The defendant argues that the plaintiff's claims are

preempted by Section 8 of the National Labor Relations Act

("NLRA") pursuant to San Diego Building Trades Council v.

Garmon, 359 U.S. 236 (1959).

When conduct is arguably subject to section 7 or section 8

of the NLRA, "the States as well as the federal courts must

defer to the exclusive competence of the National Labor

Relations Board if the danger of state interference with

national policy is to be averted." San Diego Building Trades

Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236,

6

245 (1959). Garmon recognizes that Congress conferred primary jurisdiction over disputes that fall within section 7 and section 8 of the NLRA on the National Labor Relations Board ("NLRB") to ensure uniform interpretation of the NLRA. See Int'l Longshoremen's Assoc., AFL-CIO v. Davis, 476 U.S. 380, 389-90 (1986).

However, the NLRA does not preempt all state law causes of action relating to labor disputes. "Under Garmon, a state may regulate conduct that is of only peripheral concern to the Act or which is so deeply rooted in local law that the courts should not assume that Congress intended to preempt the application of state law." Belknap, Inc. v. Hale, 463 U.S. 491, 509 (1983); accord Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 194-98 (1978); Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25, 430 U.S. 290, 296-97 (1977). In determining whether a state law cause of action arising out of conduct that is arguably prohibited by section 8 of the NLRA is preempted pursuant to Garmon, a court must consider whether the controversy at issue is identical to or different from that which could have been, but was not, presented to the NLRB. Sears, Roebuck and Co., 436 U.S. at 197. If the controversies are not identical, then the NLRA does not preempt the state cause of action because only a situation where the controversies are identical "necessarily

involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the Garmon doctrine was designed to avoid." Id. See also Lopresti, 2001 WL 1132051, at *10.

Under Section 8(b)(3) of the NLRA, a labor organization may not "refuse to bargain collectively with an employer." 29 U.S.C. § 158(b)(3). Section 8(d) defines the requirement to "bargain collectively" as the "mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement." 29 U.S.C. § 158(d).

Here, the plaintiff-employer, Neshoma, alleges that the defendant, the Union, did not bargain in good faith during the negotiations over the renewal of the Pension Agreement.[2]

---

[2] The plaintiff argues that the parties were not negotiating a collective bargaining agreement and the negotiations of the agreement were therefore not covered by the NLRA. But that argument is not supported by the allegations or the evidence. As discussed below, the parties signed a settlement agreement during the course of the negotiations which specifically referred to the prior agreement and future contemplated agreement as a collective bargaining agreement. Zomick Decl. Ex. B, at 1, 4. Moreover, Neshoma's argument that the parties were not negotiating a collective bargaining agreement is in direct tension with its argument that Section 301 provides a basis for jurisdiction over its breach of contract claim. As discussed below, in order for Section 301 to offer a possible basis for jurisdiction, the agreement at issue must have been a collective bargaining agreement.

Specifically, the plaintiff claims that the Union made a bad faith promise -- namely, a promise to ensure that the assessment of withdrawal liability against Neshoma would be rescinded -- in order to induce Neshoma to sign a renewal agreement. Neshoma claims that the Union knew at the time it made the promise that it could not -- or would not -- perform. Neshoma alleges that the Union then breached the oral contract created by the promise and also defrauded Neshoma because the Union made the promise without an intention to fulfill it.

This claim is identical to one that could have been presented to the NLRB. The claims are premised on allegations that the Union did not bargain in good faith, but instead made bad faith promises that they did not intend to keep in order to induce Neshoma to sign the renewal agreement. The claims are therefore within the exclusive jurisdiction of the NLRB because they are covered by the duty to bargain in good faith set forth in Section 8. Therefore, the plaintiff's claims are preempted by the NLRA pursuant to Garmon.[3]

_____

[3] Exceptions to Garmon preemption are recognized where the activity to be regulated is only of "peripheral concern" to the NLRA or "touches interests deeply rooted in local feeling and responsibility." Garmon, 359 U.S. at 243-44. Neshoma argues -- briefly -- that its claims fall within an exception to Garmon preemption because "the concept of fraud strikes at an interest deeply rooted in local feelings . . . ." Mem. Law Opp. Mot. Dismiss 11. However, the fraud alleged by Neshoma in its complaint -- that the Union made a bad faith promise to induce Neshoma to sign the collective bargaining agreement -- is hardly

9

Neshoma argues that the negotiations were not governed by the NLRA, and therefore its claims are not preempted under Garmon, because the Union did not represent a majority of the employees at the time of the negotiations and thus the negotiations were not collective bargaining.

However, in an agreement signed by Neshoma and the Union in April 2014, Neshoma recognized the Union "as the sole and exclusive bargaining representative for all side-musicians employed by Neshoma Inc." Zomick Aff. Ex. B, at 3. This written acknowledgment is sufficient evidence that the Union enjoyed status as the exclusive bargaining agent -- at least absent any evidence to the contrary, which has not been proffered by the Union.

Moreover, the agreement signed by the parties in April 2014 refers to the former agreement between the parties -- and the contemplated future agreement over which they were negotiating -- as a "collective bargaining agreement". Zomick Decl. Ex. B, at 1, 4. There exists a rebuttable presumption of

---

a "peripheral concern" of the NLRA: "[i]nsuring that employers and employees bargain with each other in good faith is of central important to under the [NLRA]." Hanley v. Lobster Box Rest., Inc., 35 F. Supp. 2d 366, 369 n.1 (S.D.N.Y. 1999)(quoting Kolentus v. Avco Corp., 798 F.2d 949, 961 (7th Cir. 1986)). And it is well-settled that "the state's interest in protecting its citizens from fraud and misrepresentations does not outweigh our concern in protecting the NLRB's jurisdiction from erosion through state regulation." Id. (citation omitted).

majority status "[a]t the end of the certification year or upon the expiration of the collective-bargaining agreement." Auciello Iron Works, Inc. v. N.L.R.B., 517 U.S. 781, 786 (1996). That presumption can be rebutted only by showing that either "the union did not in fact enjoy majority support" or there was a "good-faith doubt, founded on a sufficient objective basis, of the union's majority support." Id. Neshoma has presented no evidence to rebut the presumption that the Union enjoyed majority status at the expiration of the prior collective bargaining agreement. In fact, the written acknowledgment by both parties that the Union was the sole and exclusive bargaining agent in the settlement agreement indicates to the contrary.

In sum, the plaintiff does not allege in the SAC facts to support its contention that the Union did not enjoy majority support at the time of the negotiations -- nor does it provide any evidence supporting that claim in its motion, other than conclusory statements. Such mere assertions are not enough, particularly where the Union enjoys a presumption of majority status at the termination of a collective bargaining agreement, and the parties agreed, in writing, that the Union was the sole and exclusive bargaining agent.

The plaintiff also argues that this Court has jurisdiction over its claim for breach of contract pursuant to Section 301 of the Labor Management Relations Act.

Section 301 provides, in relevant part: "Suits for violation of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations, may be brought in any district court of the United States . . . ." 29 U.S.C. § 185. There is a recognized exception to the Garmon preemption doctrine where the activity which is arguably protected or prohibited by the NLRA is alleged to violate a collective bargaining agreement and jurisdiction over that claim is found under Section 301. See Vaca v. Sipes, 386 U.S. 171, 179-80 (1967); Smith v. Evening News Ass'n, 371 U.S. 195, 197 (1962); Gentilviso v. New York Pub. Library, 589 F. Supp. 587, 594 (S.D.N.Y. 1984).

Section 301 only provides a basis for jurisdiction over breach of contract claims that allege a breach of a collective bargaining agreement or require interpretation of the terms of a collective bargaining agreement. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." (internal quotation marks omitted)); Baldracchi v. Pratt & Whitney Aircraft Div., United

Techs. Corp., 814 F.2d 102, 104 (2d Cir. 1987) ("Section 301 provides subject matter jurisdiction to the federal courts for suits involving violations of collective bargaining agreements."); Legal Aid Soc'y v. City of New York, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) ("Section 301 applies only in cases where the claims asserted by a union arise out of a collective bargaining agreement.").

Here, Neshoma does not allege that the Union breached a collective bargaining agreement. Nor does Neshoma's breach of contract claim require interpretation of the terms of the collective bargaining agreement that was ultimately signed by the parties. Section 301 does not provide a basis for jurisdiction over straightforward state law breach of contract claims that can be decided without any reference to the terms of a collective bargaining agreement.

Moreover, Section 301 "has no application in the absence of a currently effective collective bargaining agreement." United Auto., Aerospace & Agr. Implement Workers of Am., Local 33 v. R.E. Dietz Co., 996 F.2d 592, 595 (2d Cir. 1993) (holding that there was no jurisdiction pursuant to Section 301 for a claim based on a letter written by the employer to its employees after the expiration of the collective bargaining agreement); Derrico v. Sheehan Emergency Hosp., 844 F.2d 22, 25 (2d Cir. 1988) ("When a complaint alleges a claim based on events occurring

after the expiration of a collective bargaining agreement, courts have held that section 301 cannot provide a basis for jurisdiction."). The oral contract that forms the basis for the plaintiff's claim was formed before the renewal agreement was signed and after the prior collective bargaining agreement had expired. Therefore, there was no collective bargaining agreement in effect at the time of the alleged breach. Accordingly, this Court does not have jurisdiction over the plaintiff's breach of contract claim under Section 301.

## III.

The Union argues that Neshoma has also failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) for indemnification, fraud, and negligent misrepresentation.

## A.

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Velez v. Levy, 401 F.3d 75, 80 (2d Cir. 2005)

(internal quotation marks and citation omitted). The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While detailed factual allegations are not required, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation," "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s].'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 555, 557). Accordingly, the basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or "mere conclusory statements." Id. A court can thus begin its analysis of the sufficiency of pleadings "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

A claim that sounds in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Litwin v. Blackstone Grp., L.P., 634 F.3d 706, 715 (2d Cir. 2011); Campbell v. Mark Hotel Sponsor, LLC, No. 09-cv-9644, 2010 WL 3466020, at *4 (S.D.N.Y. Sept. 3, 2010). Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). See also Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 399-400 (S.D.N.Y. 2012).

## B.

The Union argues that Neshoma's claim for indemnification should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Indemnification is a claim by which "the party held legally liable shifts the entire loss to another." Rosado v. Proctor & Schwartz, Inc., 484 N.E.2d 1354, 1356 (N.Y. 1985). It "arises out of a contract which may be express or may be implied in law to prevent a result which is regarded as unjust or unsatisfactory." Id. (internal quotation marks omitted). Neshoma

does not claim that there was an express contractual right to indemnity.

In order to sustain a cause of action for "implied in law" indemnity, the party seeking indemnity must show: "(1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." Ilkowitz v. Durand, No. 17-cv-773 (PGG), 2018 WL 1595987, at *13 (S.D.N.Y. Mar. 27, 2018). Additionally, a party must "establish[ ] that it cannot be held responsible for the underlying injuries to any degree." Buchwald v. Verizon, Inc., 860 N.Y.S.2d 360, 361 (App. Div. 2008); see also Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1284 (2d Cir. 1996) ("New York case law supports a proposition ... that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff . . . ."). See also KBL Corp. v. Arnouts, 646 F. Supp. 2d 335, 344 (S.D.N.Y. 2009).

Accordingly, the party seeking indemnification must have breached its duty to the third-party only by virtue of its relationship to -- and the actions of -- the party from whom indemnity is sought. See, e.g., McDermott v. City of New York, 50 N.Y.2d 211, 218 n.4 (1980) ("[C]lassic indemnity claim exists

17

... in favor of a person who has been held vicariously liable for the tort of another."); D'Ambrosio v. City of New York, 435 N.E.2d 366, 368 (N.Y. 1982) ("[W]here the master had been held liable for the tort of his servant, on a theory of respondeat superior, but the master was himself free from wrong, the master was entitled to indemnification from his servant.").

The SAC fails to allege a claim for indemnification in several respects.

First, the Union owes no duty -- and plainly has not breached any duty -- to the Fund. There is no basis for finding that the Union had any responsibility to pay into the Fund or to pay the withdrawal liability. The Fund could not sue the Union independently to recover that liability. Neither the collective bargaining agreement nor the alleged oral contract between Neshoma and the Union created such a duty.

Neshoma also has not demonstrated that the Union owed Neshoma any duty to indemnify. Neshoma's only basis for this alleged duty is the oral contract between the parties in which the Union allegedly agreed to make the withdrawal liability "go away". But Neshoma must allege that a duty to indemnify exists independent of any obligations owed by the Union to Neshoma under the oral contract. See Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture, No. 06-cv-181 (GBD), 2007 WL

2405689, at *4 (S.D.N.Y. Aug. 24, 2007), aff'd sub nom. In re
Century/ML Cable Venture, 311 F. App'x 455 (2d Cir. 2009)
("Highland fails to allege that Debtor owed it any independent
duty separate and apart from Debtor's contractual obligations
under the Recap Agreement."). According to Neshoma, the Union
promised to make the withdrawal liability "go away" and is
liable for breach of contract for failing to do so. Neshoma
cannot rely only on this same promise as the basis for its
indemnification claim. That promise allegedly formed a
contractual obligation and Neshoma can sue for breach of
contract based on the failure to fulfill that promise (if that
claim was not otherwise pre-empted), but Neshoma must
demonstrate some duty independent of this promise to state a
claim for indemnification. An indemnification claim that is
premised solely on contractual obligations between the parties
is indistinguishable from a breach of contract claim.

Lastly, Neshoma cannot establish that it is without fault.
The withdrawal liability was assessed against Neshoma because
Neshoma failed to pay the required contributions into the Fund,
causing a withdrawal, and then failed to seek arbitration to
challenge the assessment within the time set by ERISA. Even
accepting as true Neshoma's allegation that the Union forced the
Fund to assess the withdrawal liability, it was Neshoma's
actions -- namely, failing to pay the required amounts into the

Fund and failing to file for arbitration to challenge the assessment -- that provided the prerequisite for the Fund to make that assessment.  Neshoma therefore is not blameless and cannot rely on an implied in law theory of indemnity.  See Buchwald, 860 N.Y.S.2d at 361.

Accordingly, the SAC fails to state a claim for indemnification.

C.

The defendant argues that the fraud claim should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

To plead a claim for common law fraud under New York law, the plaintiff must allege: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995); GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F.Supp.2d 308, 332 (S.D.N.Y. 2009).  See also Mazzola, 849 F. Supp. 2d at 403.   Because this is a claim of fraud, the plaintiff must meet the heightened pleading standard of Federal Rule of Evidence 9(b).  See Mazzola, 849 F. Supp. 2d at 400;

20

Case v. Clivilles, No. 12-cv-8122 (MHD), 2013 WL 12325133, at *9 (S.D.N.Y. Aug. 7, 2013), report and recommendation adopted, No. 12-cv-8122 (GBD), 2013 WL 5434703 (S.D.N.Y. Sept. 26, 2013) ("To satisfy the initial pleading requirement [for a fraud claim], a plaintiff must plead facts that support a strong inference that the defendants possessed the requisite fraudulent intent." (internal quotations omitted)).

The alleged fraudulent statement -- the Union's promise to make the withdrawal liability "go away" by requesting the Fund to rescind it -- was a present expression of a future intent to perform a certain act.[4] Such a statement is only actionable if the defendant did not intend to follow through with that promise at the time the statement was made. "A present expression of intent to perform a future act is actionable as fraud only if 'actually made with a preconceived and undisclosed intention of not performing it.'" Tanzman v. La Pietra, 778 N.Y.S.2d 199, 201 (App. Div. 2004) (quoting Sabo v. Delman, 143 N.E.2d 906, 908 (N.Y. 1957)).

There are no allegations in the SAC -- other than conclusory ones -- that support a strong inference that the Union made that statement without the present intention of

---

[4] Even characterized the way Neshoma wishes -- as a "guarantee" that the liability would go away -- it was still a statement regarding a future action.

performing.[5]  To the contrary, the SAC alleges that the Union sent an email to the Fund requesting the rescission of the withdrawal liability the same day the promise was made. SAC ¶ 81.  See Case, 2013 WL 12325133, at *9 (dismissing fraud claim where the plaintiff alleged facts that supported that the defendant had taken some steps to fulfill the allegedly fraudulent promise).  The fact that the withdrawal liability was not ultimately rescinded is not sufficient to show a fraudulent intent by the Union in making that statement.  Tanzman, 778 N.Y.S.2d at 201.  Moreover, according to the SAC, the Union had previously "caused the Fund [to] rescind[] its demand to assess withdrawal liability."  SAC ¶ 58. based on the allegations in the SAC, there was reason for the Union to believe they could do so again.

Accordingly, the plaintiff's fraud claim is also dismissed for failure to state a claim.

---

[5] Neshoma argues in passing that it is clear that the statement was made with fraudulent intent because the Union knew that they had no control over the Fund.  However, if that was the case, then Neshoma also should have known that the Union could not force the Fund to rescind the withdrawal liability, and therefore could not have reasonably relied on the representation, precluding a fraud claim on the basis of unreasonable reliance.  Moreover, this argument is contradicted by the allegations in the SAC that the Union had once before successfully requested that the Fund rescind the withdrawal liability.  SAC ¶ 58.

D.

The defendant argues that the negligent misrepresentation claim should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under New York law, a claim of negligent misrepresentation must satisfy the following five elements:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).

Neshoma alleges that the Union's statement that it would make the withdrawal liability "go away" was a negligent misrepresentation because the Union knew that it could not -- or would not -- fulfill that promise in the future. But "[p]romises of future conduct are not actionable as negligent misrepresentations." Murray v. Xerox Corp., 811 F.2d 118, 123 (2d Cir. 1987); see also Hydro Investors, Inc., 227 F.3d at 20 ("[T]he alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition."). The alleged negligent misrepresentation by

23

the Union was a promise to make something happen in the future -
- to cause the Fund to rescind the withdrawal liability.  It
therefore related only to a "future expectation" and is not
actionable.  See Margrove Inc. v. Lincoln First Bank of
Rochester, 388 N.Y.S.2d 958, 960 (App. Div. 1976) ("The alleged
negligent misstatements all relate to promised future conduct,
if misstatements they be, and there is a lack of any element of
misrepresentation as to an existing material fact so as to come
within the doctrine of negligent misrepresentation . . . .").

Accordingly, Neshoma has not stated a claim for negligent
misrepresentation.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. As explained above, the Union's motion to dismiss the Second Amended Third-Party Complaint is **granted**.

The Clerk is directed to close **Docket Number 44.**

**SO ORDERED.**

Dated:    **New York, New York**
             **May 22, 2018**

                                         **John G. Koeltl**
                              **United States District Judge**