USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 5/23/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN FEDERATION OF MUSICIANS AND
EMPLOYERS' PENSION FUND, ET AL.,

        Plaintiffs,

- against -

NESHOMA ORCHESTRA AND SINGERS, INC.,

        Defendant.

NESHOMA ORCHESTRA AND SINGERS, INC.,

        Third-Party
        Plaintiff,

- against -

THE ASSOCIATED MUSICIANS OF GREATER
NEW YORK, LOCAL 802, AFM, AFL-CIO,

        Third-Party
        Defendant.

17-cv-2640 (JGK)

OPINION & ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, American Federation of Musicians and Employers' Pension Fund (the "Fund"), brings this action against the defendant, Neshoma Orchestra and Singers, Inc. ("Neshoma"), seeking to recover withdrawal liability pursuant to the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001, et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("ERISA") and section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) ("LMRA").

The Fund has moved for partial summary judgment[1] on the ground that Neshoma has forfeited any right to challenge the validity of the withdrawal liability because Neshoma did not pursue arbitration to challenge the assessment of withdrawal liability within the deadline set by ERISA.

For the reasons stated below, the motion for partial summary judgment is **granted**.

### I.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of

---

[1] The Court understands from argument on the current motion that the plaintiff seeks summary judgment only on Count I of its Amended Complaint.

2

"informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if any evidence in the record from any source would enable a reasonable inference to be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). See also Wesley-Dickson v. Warwick Valley Cent. Sch.

3

Dist., 973 F. Supp. 2d 386, 390-91 (S.D.N.Y. 2013), aff'd, 586 F. App'x 739 (2d Cir. 2014).

## II.

The following facts are undisputed unless otherwise noted.

The Fund is a multiemployer pension benefit plan under ERISA. Pl.'s Rule 56.1 Statement ¶ 1. Neshoma contributed to the Fund on behalf of certain of its employees who were members of the Associated Musicians of Greater New York, Local 802, AFM (the "Union"). Def.'s Rule 56.1 Counterstatement ¶ 3.

On July 31, 2009, the collective bargaining agreement between Neshoma and the Union expired. Luebking Decl. ¶ 7. As a result of this expiration and the inability of the parties to negotiate a renewal agreement, in July 2012, Neshoma stopped remitting contributions to the Fund. Id. ¶ 9.

In June 2013, the Fund terminated Neshoma as a contributing employer because Neshoma had failed to pay the required pension contributions since July 2012.[2] Pl.'s Rule 56.1 Statement ¶ 4; Luebking Decl. ¶ 9. The Fund determined that Neshoma had permanently ceased to have an obligation to contribute to the Fund and had thus withdrawn from the Fund pursuant to ERISA.[3]

---

[2] The defendant does not dispute that it was terminated by the Fund. It disputes only whether the termination was lawful under ERISA. Def.'s Rule 56.1 Counterstatement ¶ 4.
[3] The defendant does not dispute that the Fund made this determination, but only disputes whether the determination was lawful under ERISA. Def.'s Rule 56.1 Counterstatement ¶ 5.

4

Pl.'s Rule 56.1 Statement ¶ 5; Luebking Decl. ¶ 10. The Fund determined that it was owed withdrawal liability as a result of this termination. The Fund calculated the amount of Neshoma's withdrawal liability at $1,111,124.00. Pl.'s Rule 56.1 Statement ¶ 6; Luebking Decl. ¶ 11.

On August 27, 2015, the Fund sent a letter informing Neshoma that Neshoma had effected a complete withdrawal from the Fund by permanently ceasing contributions for musician employers and that it was consequently liable for withdrawal liability. Luebking Decl. Ex. D. The letter made a formal demand for payment of withdrawal liability in the amount of $1,111,124.00 in accordance with a schedule set forth in the letter. Id. The letter also informed Neshoma that it had a right to request a review of the assessment within 90 days. Id. The letter was addressed to Michael Sojcher, Neshoma Orchestra, 420 Central Avenue, Cedarhurst, NY 11516. Id.

On August 31, 2015, counsel for Neshoma responded to the August 27 demand letter. Luebking Ex. E. In the letter, Neshoma disputed that it was liable for the withdrawal liability, arguing that it had not withdrawn from the Fund because there was an ongoing labor dispute between itself and the Union which relieved it of the requirement to make payments to the Fund. Id. The letter also stated: "Should the Pension Fund not withdraw its demand for payment of withdrawal liability

5

based upon the labor dispute exception, please consider this letter as a demand for arbitration as to the issue of liability and the calculation of liability." Id. While the letter set forth Neshoma's position and requested several documents related to the withdrawal liability assessment, it did not formally request a review of the assessment by the Fund. Id.

On September 21, 2015, the Fund responded to Neshoma's August 31, 2015 letter. Luebking Ex. F. The Fund construed Neshoma's letter as a request for review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A). Id. The letter stated that Fund had "determined that Neshoma is not entitled to the protection of the labor dispute exception because its withdrawal was the result of termination for failure to pay contributions when due, and not because of a labor dispute." Id. Accordingly, the Fund again demanded payment of the withdrawal liability. Id.

On January 11, 2016, Neshoma sent a letter to the Fund which enclosed a copy of a demand for arbitration that had been sent to the American Arbitration Association ("AAA") the same day. Luebking Ex. G. A check for $275 was sent with the letter to the AAA. Id.

To date, Neshoma has not made any payment toward the outstanding withdrawal liability.

6

## III.

The plaintiff argues that the defendant cannot challenge the assessment of the withdrawal liability in this proceeding because Neshoma did not file a request for an arbitration by the deadline set by ERISA.

ERISA requires that "[a]ny dispute between an employer and the plan sponsor of the multiemployer plan concerning [the assessment of withdrawal liability] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Arbitration must be initiated by the deadline set forth in ERISA. If the deadline is not met, the withdrawal liability becomes due and owing on the schedule set forth by the plan sponsor. 29 U.S.C.A. § 1401(b)(1).

An employer has 90 days from the receipt of the assessment notice to request review by the plan sponsor of any specific matter relating to the determination of the employer's liability. 29 U.S.C. § 1399(b)(2)(A).

If an employer requests review of the assessment within the 90-day period, the plan sponsor is required to respond to the request for review. 29 U.S.C. § 1399(b)(2)(B). ERISA does not set a deadline for the plan sponsor to respond to that request. Id. However, if the plan sponsor responds to the request for review within 120 days, the employer has an additional sixty days from the date of the response to initiate arbitration. 29

7

U.S.C. § 1401(a)(1). If the plan sponsor does not response to the request within 120 days, the employer has an additional sixty days to initiate arbitration after the 120th day. 29 U.S.C. § 1401(a)(1). In other words, where a request for review has been made, a party may unilaterally request arbitration within the earlier of (a) 180 days after the employer's request for review or (b) 60 days after the plan sponsor responds to the request for review. 29 U.S.C. § 1401(a)(1).

If an employer does not make a request for review within the 90 days, arbitration may only be requested jointly by both parties and must be requested within 180 days of the notice of the assessment. 29 U.S.C. § 1401(a)(1).

If an employer fails to initiate an arbitration proceeding by the deadline set by § 1401, it is barred from contesting the adequacy of notice, the amount owed, or the imposition of the liability. 29 U.S.C.A. § 1401(b)(1) ("If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection."); see Amalgamated Lithographers of Am. v. Unz & Co., 670 F. Supp. 2d 214, 225-26 (S.D.N.Y. 2009); Bowers v.

Greenpoint Warehousing & Distribution Servs., Inc., No. 91-cv-3784 (TPG), 1992 WL 110756, at *2 (S.D.N.Y. May 5, 1992) ("Failure to initiate arbitration within the statutory time period operates as a waiver of arbitration, thereby fixing the withdrawal liability and foreclosing any challenge to its imposition."); see also Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990) (noting that the MPPAA "established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner"). "Accordingly, if an employer fails to initiate the arbitration process to contest the amount of withdrawal liability assessed against it, the employer has waived its right to arbitration, and a federal court will not make an independent determination that the plan sponsor's assessment was unreasonable." Vacca v. Bridge Chrysler Jeep Dodge, Inc., No. 06-cv-3543 (ERK), 2008 WL 4426875, at *6 (E.D.N.Y. Sept. 4, 2008), report and recommendation adopted, (E.D.N.Y. July 1, 2009); see also Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc., No. 05-cv-6138 (RPP), 2006 WL 2051107, at *10 (S.D.N.Y. July 21, 2006) ("By failing to timely initiate arbitration according to ERISA's provisions, Defendants waived their right to arbitrate the withdrawal liability assessment.").

The Fund argues that, because Neshoma did not initiate an arbitration within the time prescribed by the statute, it has forfeited its right to challenge the plaintiff's claim for recovery of the withdrawal liability.

It is undisputed that the Fund sent a letter to Neshoma on August 27, 2015 informing Neshoma that the Fund had determined that Neshoma had effected a complete withdrawal from the Fund and that as a result the Fund was assessing withdrawal liability. Luebking Decl. Ex. D. It is also undisputed that Neshoma responded in a letter on August 31, 2015, explaining that it did not believe it had effected a withdrawal because there was an ongoing labor dispute that relieved it of the duty to contribute to the Fund. Luebking Decl. Ex. E. The Fund construed the August 31 letter from Neshoma as a request for review pursuant to 29 U.S.C. § 1399(b)(2)(A) and sent a letter with a decision on that request pursuant to 29 U.S.C. § 1399(b)(2)(B) on September 21, 2015. Id. Because this response was sent to Neshoma within 120 days of the request for review, Neshoma's deadline to initiate arbitration was 60 days after this decision, or November 20, 2015. 29 U.S.C. § 1401(a)(1).

Neshoma did not file a request for arbitration with the AAA until January 11, 2016, nearly two months after November 20, 2015, the deadline set by 29 U.S.C. § 1401. Luebking Decl. Ex. G. Because Neshoma did not meet the deadline to file for

10

arbitration set by ERISA, the amount of withdrawal liability is fixed and Neshoma cannot challenge its imposition. See 29 U.S.C.A. § 1401(b)(1); Gesualdi v. Seacost Petroleum Prods., Inc., 97 F. Supp. 3d 87, 99 (E.D.N.Y. 2015) ("Due to Defendant's failure to initiate arbitration proceedings, it has waived its right to do so and, more importantly, to assert any defenses to Plaintiffs' claim for recovery of withdrawal liability in this action."); Bowers, 1992 WL 110756, at *2.

The plaintiff puts forth several arguments that its failure to file for arbitration by the deadline is not fatal to its defense. None is persuasive.

First, the plaintiff argues that the notice of assessment of withdrawal liability was not effective -- and therefore withdrawal liability was never legally imposed on Neshoma -- because the notice send by the Fund was not addressed to the proper legal entity. The letter from the Fund notifying Neshoma of the Fund's assessment of withdrawal liability was addressed to Michael Sojcher at "Neshoma Orchestra". Luebking Decl. Ex. D. Neshoma argues that its proper legal name is "Neshoma Orchestra & Singers Inc." and therefore the notice was ineffective because it was not addressed to the proper legal entity.

But it is undisputed that the August 27, 2017 letter from the Fund was sent to the correct address and that Neshoma

11

actually received the letter. Indeed, Neshoma responded to the letter four days later and requested that the Fund update their records with the plaintiff's correct name. Therefore, Neshoma plainly received a letter setting forth the amount of liability, a schedule for liability payments and a demand for payment in accordance with that schedule. Such notice is plainly sufficient under ERISA. See 29 U.S.C. § 1399(b); see, e.g., Amalgamated Lithographers of Am., 670 F. Supp. 2d at 224 ("All that is required is that the plan gives the employer the necessary information."). Any minor error in the name of the entity in the signature block of the letter does not negate the actual notice of the assessment received by Neshoma.

Moreover, any disputes regarding the adequacy of the notice must be resolved in arbitration. See Bowers, 901 F.2d at 262 ("'Any dispute concerning the notice or amount of withdrawal liability 'shall be resolved through arbitration.'" (citing 29 U.S.C. § 1401(a)(1))). Accordingly, because Neshoma has missed the deadline to file for arbitration under ERISA, it has abandoned any argument regarding inadequate notice. See Amalgamated Lithographers, 670 F. Supp. 2d at 224.

Next, Neshoma argues that it demanded arbitration in its August 31, 2015 letter to the Fund and it therefore met the deadline under ERISA. In the August 31 letter, Neshoma stated: "Should the Pension Fund not withdraw its demand for payment of

12

withdrawal liability based upon the labor dispute exception, please consider this letter as a demand for arbitration as to the issue of liability and the calculation of liability." Luebking Decl. Ex. E.

But a demand for arbitration sent only to the Fund is insufficient. The Withdrawal Liability Rules governing the agreement between the Fund and Neshoma require a demand for arbitration to be filed with the AAA.[4] See Luebking Decl. Ex. B, at 3 ("[T]he employer may initiate a binding arbitration regarding the assessment by making a formal filing with the American Arbitration Association within [the time limits set by § 1401].") And Neshoma plainly had notice of this requirement in the rules. The Fund attached a copy of the rules to its

---

[4] The AAA rules governing arbitration under ERISA also require that notice be sent to the AAA in order to initiate arbitration. See Rules of the American Arbitration Association § 7 (1986) (requiring notice on both the opposing party and the regional office of the AAA to initiate arbitration). Those rules have been formally approved and adopted by the Pension Benefit Guaranty Corporation ("PBGC") as fair and equitable procedures for arbitrations under ERISA. See 29 U.S.C. § 1401(a)(2); 51 Fed. Reg. 22585 (June 20, 1986) (announcement of the adoption by the Pension Benefit Guaranty Corporation of the American Arbitration Association rules); I.L.G.W.U. Nat. Ret. Fund v. Meredith Grey, Inc., 94 F. App'x 850, 852 (2d Cir. 2003) (summary order). Accordingly, the requirement in the Fund's Withdrawal Liability Rules that the demand must be served on both the opposing party and the AAA is plainly fair and equitable under 28 U.S.C. § 1401(a)(1), and any challenge to the validity of this procedure is meritless.

13

September 21, 2015 letter to Neshoma and specifically noted that "the Fund's rules require use of the American Arbitration Association and specify that arbitration may be initiated only by a formal filing with AAA." Luebking Decl. Ex. F.

Therefore, the demand on the Fund in the August 31, 2015 letter was insufficient to initiate arbitration under the Withdrawal Liability Rules. Neshoma did not initiate arbitration until January 11, 2016 when it served a request for arbitration with the AAA.

Neshoma also argues that the filing fee required by the AAA to process a demand for arbitration is prohibitively expensive and therefore a violation of Neshoma's "constitutional right to redress" under the Fourteenth Amendment and the Equal Protection Clause. Neshoma does not cite any cases in which a court has found that the fee charged by AAA is unconstitutional.

Neshoma filed for arbitration with the AAA on January 11, 2016 and tendered a $275 fee. Neshoma asserts that it tendered a $275 fee -- rather than the $8,200 fee required by the AAA -- because the fee was "well beyond reasonable and beyond the ability of Neshoma to pay." Def.'s Rule 56.1 Response ¶ 56. But Neshoma's assertion that it did not have the resources to pay the $8,200 fee does not explain why it filed for arbitration nearly two months after the deadline to do so. Neshoma could

14

have made the same filing with a $275 payment -- or a payment of whatever it could afford -- prior to the deadline.

Accordingly, this Court need not decide whether the AAA fee is unconstitutional, because Neshoma did not file a timely demand for arbitration in any event. The alleged unconstitutionality of the AAA fee does not excuse Neshoma's failure to file a timely demand for arbitration together with a payment of whatever portion of the fee it could afford. The demand was untimely and therefore would have been ineffective regardless of what fee was required or submitted -- or whether that fee was unconstitutional. To the extent that Neshoma considered the filing fee to be prohibitive, it could have filed a timely request for arbitration and sought to challenge the size of the fee in the arbitration.

Lastly, Neshoma argues that the AAA fee has not been approved by the regulating body, the PGBC, and is therefore unenforceable. But again, Neshoma failed to file its demand for arbitration on time. By doing so, Neshoma has forfeited its right to challenge the fee on the basis that it has not been approved by PGBC. See Central States, Southeast and Southwest Areas Pension Fund v. Allega Concrete Corp., 772 F.3d 499, 501 (7th Cir. 2014) (declining to decide whether the AAA fee schedule must be approved by the PGBC before it is effective because the defendant "did not take the essential first step: a

15

timely demand for arbitration sent to the AAA"); New York State Teamsters Conference Pension & Ret. Fund, Nolan v. St. Lawrence Transit Mix Corp., 612 F. Supp. 1003, 1007 (N.D.N.Y. 1985) (rejecting party's argument that it was not required to seek arbitration within the deadline set by ERISA because the regulations had not been adopted by PBGC and noting "plaintiff should have timely invoked the arbitration and then sought the court's assistance if the parties could not agree on the arbitration procedures"). Moreover, the one Court of Appeals to address this issue has found that the AAA may impose the increased fee while its application for approval is pending before the PGBC. Central States, Southeast and Southwest Areas Pension Fund v. Bulk Transport Corp., 820 F.3d 884, 888 (7th Cir. 2016).

Accordingly, the plaintiff has not offered any justification for its failure to file for arbitration by the deadline set in ERISA and thus the withdrawal liability is due and owing.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. As explained above, the Fund's motion for partial summary judgment on Count I of the Amended Complaint is **granted**.

The Clerk of Court is directed to close **Docket Number 36**.

**SO ORDERED.**

Dated:    New York, New York
             May 22, 2018

_____
**John G. Koeltl
United States District Judge**